## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Laura Weinstock | Anthony Bianco |

**Proceedings:**     PLAINTIFF'S MOTION FOR COLLATERAL ESTOPPEL (Dkt. 46, filed November 19, 2015)

DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT (Dlt. 49, filed December 7, 2015)

## I.     INTRODUCTION

On October 6, 2015, plaintiff filed the operative First Amended Complaint ("FAC") in this action against defendants Jeh Johnson, in his capacity as the Secretary of the Department of Homeland Security, Leon Rodriguez, in his capacity as the Director of the United States Bureau of Citizenship and Immigration, and Susan Curda, in her capacity as the Director of the Los Angeles office of the United States Citizenship and Immigration Services ("USCIS") (collectively, "defendants").  Dkt. 41.

Plaintiff fled Pakistan in 2001 out of fear of persecution for his involvement with a Pakistani political group the Muhajir Qaumi Movement–Altaf Faction ("MQM–A").  See Certified Administrative Record ("CAR"), at 442-43.  Plaintiff applied for asylum in the United States and was, eventually, granted asylum in 2006.  Id. at 56, 442-43.  One year later, plaintiff applied with USCIS to adjust his citizenship status from asylee to permanent resident.  Id. at 51-55.  However, USCIS denied plaintiff's application.  Id. at 1-4.  Specifically, USCIS determined that the MQM–A was an "undesignated terrorist organization" and therefore found that plaintiff was statutorily ineligible for an adjustment of status to permanent resident because he had provided "material support" to terrorist activity.  Id.  In his complaint, plaintiff requests that the Court set aside USCIS's denial of his application for adjustment to permanent status.  Plaintiff argues that in granting his application for asylum defendants necessarily determined that plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'    JS-6

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|----------|------------------------|------|------------------|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

involvement with the MQM–A did not constitute "terrorist activity" and thus did not render him statutorily ineligible for an adjustment of status.  Accordingly, plaintiff argues that, under the doctrine of collateral estoppel, defendants should be precluded from denying plaintiff's application for an adjustment of status on the grounds that he has engaged in terrorist activity.

On November 19, 2015, plaintiff filed a motion for summary judgment.  Dkt. 46.[1] On December 7, 2015, defendants filed an opposition to plaintiff's motion and filed their own motion for summary judgment.  Dkt. 49.  On January 11, 2016, plaintiff filed an opposition to defendants' motion, Dkt. 57, and on January 15, 2016, defendants filed a reply in support of their motion, Dkt. 58.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Except where noted, the following facts are undisputed and are taken from the certified administrative record in this matter, which has been lodged with the court.  Dkt. 47.

### A.    Statutory Framework

8 U.S.C. § 1158 governs the process by which a foreign national may apply for asylum.  Pursuant to this statute, "[a]ny alien who is physically present in the United States or who arrives in the United States . . . may apply for asylum."  8 U.S.C. § 1158(a)(1).  In order for an Immigration Judge ("IJ") to grant an application for asylum, the applicant must demonstrate that he or she qualifies as a "refugee."  Id. § 1158(b)(1)(A).  A refugee is defined as a person who is unable or unwilling to return to their home country  "because of persecution or a well-founded fear of persecution on

---

[1] Plaintiff's motion is entitled "Motion for Collateral Estoppel."  Dkt. 46.  The Court construes this motion as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Plaintiff appears to be arguing that based on the administrative record in this action and the declarations of his attorney, i.e. materials outside of his pleadings, he is entitled to judgment as a matter of law.  Such an inquiry is appropriately addressed on a motion for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|
| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A). In addition, the IJ must determine there are no statutory bars that preclude the applicant from obtaining asylum. Id. § 1158(b)(2)(A). As relevant here, one of those statutory bars is that the applicant has been involved in "terrorist activity." Id. § 1158(b)(2)(A)(v).

After an applicant has been granted asylum, 8 U.S.C. § 1159, governs the process by which an asylee may apply for an adjustment of citizenship status to "permanent resident." Under this section, the Secretary of Homeland Security or the Attorney General may, in their discretion, adjust to permanent resident the status of any alien granted asylum who, *inter alia*, "has been physically present in the United States for at least one year after being granted asylum," "continues to be a refugee within the meaning of section 1101(a)(42)(A)," and "is admissible (except as otherwise provided under subsection (c) of this section) as an immigrant under this chapter at the time of examination for adjustment of such alien." Id. § 1159(a)(2)(B)(1)-(5). Subsection (c), in turn, refers to section 1182, which defines ten categories of individuals who are ineligible for admission to the United States. As relevant here, one of these categories includes individuals who are involved in "terrorist activities." Id. § 1182(a)(3)(B).

**B.     Khan's Application for Asylum**

Khan is a citizen of Pakistan who entered the United States on November 14, 2001 with his wife and two of his children. CAR, at 51, 442-43. On November 6, 2002, Khan filed an application for asylum on behalf of himself, his wife, and his children, with the former Immigration and Naturalization Services ("INS").[2] CAR, at 441-49. Khan submitted his application via an INS form I-589, Application for Asylum and for Withholding of Removal. Id. In response to several of the questions on the I-589 form, Khan referred to his membership with the MQM–A. For example, one of the questions asks: "Do you fear harm or mistreatment if you return to your home country?" Id. at 445. Khan responded: "I am in fear of returning to my home country, where I would be detained and beaten, and possibly killed by the police because of my membership with

---

[2] On March 1, 2003, the INS was dissolved and many of its relevant functions were transferred to the newly created Department of Homeland Security. See Homeland Security Act of 2002, Pub. L. No. 107-296, 110 Stat. 2135 (Nov. 25, 2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'    JS-6**

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

the M.Q.M." Id.  Another question asks: "Are you afraid of being subjected to torture in your home country or any other country to which you may be returned?" Id. at 446.  Khan responded: "I am afraid that I will be harassed by the military police, as I was detained and beaten because of my membership in the M.Q.M., and threatened by death." Id. at 446.  In addition, Khan attached a declaration to his I-589 form in which he admitted that he joined the MQM–A in September of 1996, and that his responsibilities with the group included distributing leaflets and helping Mohajirs in Pakistan to find housing, employment, and utility services. Id. at 452.

In May of 2003, an asylum officer in the INS's Los Angeles Asylum Office interviewed Khan regarding his asylum application. Id. at 427.  The asylum officer denied Khan's application because he found that Khan's testimony was "not credible because it contained material discrepancies within itself and with evidence [Khan] brought to his interview." Id.  The asylum officer also prepared an "assessment" of Khan based upon Khan's interview. Id. at 429-31.  In this assessment, the asylum officer made frequent reference to Khan's involvement with the MQM–A. See, e.g., id. at 429 ("[Khan] related that he has been an active member in the MQM–Altaf party since September 1996 and was still a member at the time of his asylum interview."); id. at 430 ("The applicant presented, at the time of his interview, a letter from the MQM–A dated February 05, 2002, which indicates that he has been a member of this party since 1996").  The asylum officer also noted, in his assessment, that he questioned Khan regarding allegations that the MQM–A was a violent group. Id. at 431.  Specifically, the asylum officer stated:

> The applicant was asked if MQM–A was not a violent group or accused of this.  He replied that his party had never done acts of violence, and that it was the rival MQM–H[aqiqi] which had committed the violent acts.  However, credible country conditions indicate that the MQM–A has engaged in numerous acts of violence and torture during the 1990's against off duty police officers and their families; Mohajirs who choose to join political parties other than the MQM have been intimidated or attacked by MQM loyalist[s]; and the MQM has attacked and intimidated news agencies critical of it.  The leadership [of] the MQM know which of its members commit terrorists activities [sic], but chooses not to expel them because they are deemed to be useful.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL                'O'    JS-6

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|----------|------------------------|------|------------------|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

Id.  The asylum officer noted Khan's testimony that the MQM–A was a non-violent organization as one of the discrepancies that made his testimony not credible.  Id.

As a result of the asylum officer's findings, the INS did not grant Khan's asylum application, and issued him a Notice to Appear ordering him to appear before an Immigration Judge ("IJ") for removal proceedings on June 23, 2003, as well as for a *de novo* consideration of his asylum claim.  Id. 424-25.  Khan appeared before an IJ on June 23, 2003, and renewed his asylum claim.  Id. at 162.  Khan's asylum hearing was held on July 21, 2004.  Id. at 165.

During his asylum hearing, Khan was asked whether he was a member of any political party or organization in Pakistan.  Id. at 178.  In response to this question, Khan informed the IJ that he was a member of the MQM–A and had been a member since September of 1996.  Id.  Khan was also asked why he had joined the MQM–A and what services he provided for that organization.  Id. at 179.  He responded that he had joined the MQM–A "for the benefit of the Muhajirs" who face difficulties finding employment and gaining access to utilities and other services in Pakistan.  Id.  Khan was asked to be more specific regarding his activities on behalf of the MQM–A.  Id.  He elaborated that his activities had also included fundraising, recruitment, and the "resolution of people's complaints."  Id.  Khan was then asked follow-up questions regarding what he meant by "resolution of people's complaints" and Khan explained that various members of the MQM–A would complain that they were having difficulty obtaining access to water and public utilities and finding jobs, and Khan would help resolve these complaints.  Id. at 179-80.

Ultimately, the IJ determined that Khan lacked credibility and denied his application for asylum on July 22, 2004.  Id. at 152-56.  The IJ issued a formal order in which he explained that he was denying Khan's application because he found that Khan had failed to sufficiently establish that he was a refugee with a credible fear of persecution.  Id.  In this order, the IJ also briefly referred to Khan's testimony that he was a member of the MQM–A and had performed various tasks for that organization.  See id. at 147 ("The respondent paraphrased that he acted as an ombudsman and as a figure head for the MQM by advocating better housing, utilities, and employment, as well as resolving disputes and fundraising on behalf of the Muhajirs.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**    **JS-6**

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

Khan appealed the IJ's denial of his application to the Board of Immigration Appeals ("BIA"). Id. 293. Khan argued on appeal that the IJ's credibility determinations were unsupported by the facts in the record and articulated by the IJ during Khan's asylum hearing. Id. at 120. On October 27, 2005, the BIA sustained Khan's appeal and found that it could not uphold the IJ's negative credibility finding. Id. at 58-60. Specifically, the BIA reasoned that under the law of the Ninth Circuit, the "Immigration Judge's speculation that the respondent was not fleeing persecution when he arrived in the United States in 2001" could not support a negative credibility finding, and noted that the "Ninth Circuit has often stated that an Immigration Judge may not deny an asylum application based simply upon his or her perception that an alien's testimony is implausible." Id. at 59. In its order, the BIA also noted Khan's testimony that he had fled Pakistan in 2001 after he was arrested and detained for his support of the MQM–A party. Id. The BIA suggested that this testimony supported Khan's assertion that he had a reasonable fear of persecution if he returned to Pakistan. Id. Accordingly, the BIA ordered that Khan was statutorily eligible for asylum and that he was not "undeserving of such relief as a matter of discretion." Id. at 60.[3]

The BIA remanded Khan's asylum application to the IJ, id. at 60, and the IJ granted Khan, and his family, asylum status on June 5, 2006, id. at 56.

**C.    Khan's Application for Adjustment of Status**

On June 8, 2007, Khan filed an application for adjustment of status with USCIS requesting that he, and his family, be made permanent residents of the United States. CAR, at 51-55. Khan submitted his application via a USCIS form I-485, Application to Register Permanent Resident or Adjust Status. Id. On June 24, 2009, USCIS sent Khan a letter conveying that he appeared to be ineligible for admission to the United States. See Dkt. 1, Compl. Ex. D. USCIS stated that the grounds for Khan's ineligibility was his affiliation with the MQM–A, an organization USCIS contends is a terrorist organization. Id. Nonetheless, rather than denying Khan's application, USCIS stated that it was "holding adjudication in abeyance" while the Department of Homeland Security considered policies that might enable USCIS to approve Khan's application in the future.

---

[3] The BIA did not, however, make an express determination regarding whether Khan's involvement with the MQM–A constituted "terrorist activity."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL     'O'     JS-6

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

Id.  More specifically, beginning in March 2008, USCIS enacted a policy that, in cases where an applicant was inadmissible for terrorist-related activities, USCIS would place an application on hold in order to await the possible exercise of the Secretary of Homeland Security's discretionary authority to create exemptions to the inadmissibility bars, such that the applicant could receive a favorable adjudication.  Dkt. 11-1, Canaan Decl., at 5-9.  Khan and his family's applications were placed on hold pursuant to this policy.

On August 11, 2014, Khan and his family filed a complaint in this Court claiming that defendants had unreasonably delayed adjudicating their applications to adjust status. Dkt. 1, Compl.  By the time Khan filed his complaint, his and his family's I-485 applications had been pending for over seven years.  On April 17, 2015, the Court held a telephonic status conference.  Dkt. 24.  During this conference, defendants represented that, although the I-485 applications of the other members of Khan's family had been adjudicated in those person's favor, defendants would not adjudicate Khan's application unless ordered to do so by the Court.  See Dkt. 25, at 2.  Accordingly, the Court, on its own motion, ordered defendants to adjudicate Khan's I-485 application within sixty days. Id.

On April 28, 2015, USCIS issued Khan a Notice of Intent to Deny ("NOID") on the grounds that plaintiff had engaged in terrorist activities by providing material support to the MQM–A.  CAR, at 15-17.  In the NOID, USCIS noted that Khan had stated on his asylum application that he was a member of the MQM–A and, as a member, had "distributed leaflets, collected money and persuaded others to join the group."  Id. at 16. USCIS then went on to explain why it considered the MQM–A to be a terrorist organization, as that term is defined under the Immigration and Naturalization Act (the "INA").  Id. at 16-17.[4]  Specifically, USCIS stated that "[a]ccording to widely available

---

[4] The INA sets forth three categories of terrorist organizations referred to as Tier I, II, and III organizations.  See 8 U.S.C. § 1182(a)(3)(B)(vi).  Tier I and II organization are formally designated as terrorist organization either by statute under the INA itself (Tier I) or by the Secretary of State in consultation with the Attorney General or the Secretary of Homeland Security (Tier II).  Id. § 1182(a)(3)(B)(vi)(I)-(II).  By contrast, Tier III organizations, referred to as "undesignated terrorist organizations," need not be formally designated.  Id. § 1182(a)(3)(B)(vi)(III).  Instead, Tier III organizations are defined as "a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL   'O'   JS-6

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

public information, the MQM–A engaged in numerous violent activities, including killings, in Pakistan during the 1990s." Id. at 16.  Based on these acts, USCIS explained that it considered the MQM–A to meet the definition of an "undesignated terrorist organization" under the INA.  Id. at 17.

On May 26, 2015, Khan, through his counsel, filed a response to the NOID.  Id. at 9-10.  In this response, Khan noted that at no time during his asylum proceedings was he ever found to have been involved in "terrorist activity."  Id. at 9.  Khan also noted that the MQM–A had never been designated as either a Tier I or Tier II organization, and that the NOID represented the first time in this case in which USCIS had designated the MQM–A as a terrorist organization.  Id.  Finally, Khan challenged USCIS's finding that his services on behalf of the MQM–A constituted "material support" for terrorist activities and argued that USCIS had failed to establish that Khan knew or should have known that his actions might constitute material support for terrorist activities.  Id. at 9-10.

On June 11, 2015, USCIS formally denied Khan's application, finding him to be ineligible for admission to the United States on the basis of his activities with the MQM–A.  Id. at 1-4.  On October 6, 2015, Khan filed an amended complaint with this Court requesting that the Court set aside USCIS's denial of his application.

## III.   LEGAL STANDARD

### A.   Motion for Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential

---

group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, [terrorist activity]."  Id.  The INA then sets forth a series of criteria regarding what constitutes "terrorist activity."  Id. § 1182(a)(3)(B)(iv)(I)-(IV).  Decision makers, such as Immigration Judges, may then find, based on the facts of a given case, and in light of the criteria set forth in the INA, that a particular group is an undesignated terrorist organization.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**     **JS-6**

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

elements of each claim upon which the moving party seeks judgment.  See Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986).

        If the moving party meets its initial burden, the opposing party must then set out
specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The
nonmoving party must not simply rely on the pleadings and must do more than make
"conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871,
888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for
the moving party if the nonmoving party "fails to make a showing sufficient to establish
the existence of an element essential to that party's case, and on which that party will
bear the burden of proof at trial."  Celotex, 477 U.S. at 322; see also Abromson v. Am.
Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

        In light of the evidence presented by the nonmoving party, along with any
undisputed facts, the Court must decide whether the moving party is entitled to judgment
as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d
626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the
inferences to be drawn from the underlying facts . . . must be viewed in the light most
favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E.
Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving
party is proper when a rational trier of fact would not be able to find for the nonmoving
party on the claims at issue.  See Matsushita, 475 U.S. at 587.

### B.     Standard of Review under the Administrative Procedure Act

        A reviewing court may set aside agency action if it is "arbitrary, capricious, an
abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or if
the agency acts without observing "procedure required by law," 5 U.S.C. § 706(2)(D).  A
reviewing court must examine the administrative record to determine whether the agency
has "articulated a rational relationship between its factual findings and its decision . . .
[and whether] its decision was based on relevant factors and does not constitute a clear
error of judgment."  Fence Creek Cattle Co. v. U.S. Forest Serv., 602 F.3d 1125, 1132
(9th Cir. 2010).  In regards to the USCIS in particular, it is "an abuse of discretion for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     **'O'    JS-6**

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

Service to act if there is no evidence to support the decision or if the decision was based on an improper understanding of the law." <u>Kazarian v. U.S. Citizenship & Immigration Services</u>, 596 F.3d 1115, 1118 (9th Cir. 2010). In addition, when an agency offers multiple, independent and adequate grounds for its decision, a court should "affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable." <u>BDPCS, Inc. v. F.C.C.</u>, 351 F.3d 1177, 1183 (D.C. Cir. 2003).

## IV.   ANALYSIS

Khan argues that USCIS should be collaterally estopped from denying his application for adjustment of status on the grounds that he has engaged in terrorist activity with the MQM–A. Defendants argue that the Court should reject this argument for two reasons: First, they argue that the doctrine of collateral estoppel does not apply to USCIS's determination of an applicant's eligibility for admission to the United States. Second, they argue that, even applying the doctrine of collateral estoppel, Khan has failed to satisfy all of the elements of collateral estoppel. The Court addresses each of these arguments in turn.

### A.   Whether Collateral Estoppel Applies to USCIS's Adjudication of an Adjustment of Status Application

"Congress is understood to legislate against a background of common-law adjudicatory principles." <u>Astoria Fed. Sav. & Loan Ass'n. v. Solimino</u>, 501 U.S. 104, 108 (1991). Accordingly, the Supreme Court has held that there is a presumption that Congress intended for well-established common-law principles, such as collateral estoppel, to apply to the decisions of administrative agencies. <u>Id.</u> ("[W]here a common-law principle is well established, as are the rules of preclusion, the courts may take it as given that Congress has legislated with an expectation that the principle will apply") (citations omitted); <u>see also</u> <u>Univ. of Tenn. v. Elliott</u>, 478 U.S. 788, 798 (1986) ("We have previously recognized that it is sound policy to apply principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity."). This presumption applies "except when a statutory purpose to the contrary is evident." <u>Astoria</u>, 501 U.S. at 108. In other words, absent a legislative intent to the contrary, the Court should presume that common-law principles such as collateral estoppel, apply to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**         **'O'    JS-6**

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|----------|------------------------|------|------------------|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

the decisions of USCIS.  The Supreme Court has also noted that the legislative intent to bar application of collateral estoppel does not require a "clear statement" to that effect; rather, it can be inferred from the plain language of the statute.  Id., 501 U.S. at 108.

Defendants concede that the governing statute in this case—the INA—does not contain an express provision requiring USCIS to adopt any particular preclusion principles.  However, they argue that it is apparent from the plain language of the INA that Congress did not intend for administrative collateral estoppel to apply.  In particular, they note that 8 U.S.C. § 1159(b)(5) states that, in adjudicating an application for adjustment of status, USCIS must determine whether an applicant is eligible for admission to the United States "*at the time* of examination for adjustment." (emphasis added).  Defendants argue that, regardless of any earlier asylum proceedings, the language "at the time" requires USCIS to conduct an entirely new inquiry into the asylee's admissibility when he or she applies to become a permanent resident.  Defendants contend that if the IJ's findings in the asylum proceeding were to have preclusive effect, that would limit the efficacy of having USCIS conduct a second and new inquiry when the applicant applies for permanent residency.

Defendants are correct that the INA envisions a two-step inquiry whereby an applicant's admissibility to the United States is evaluated both when they apply for asylum and when they apply for permanent residency.  However, that Congress intended for applicants to be evaluated twice does not, in and of itself, suggest that Congress intended to bar the application of collateral estoppel—particularly given that there is a presumption that collateral estoppel *should* apply to the decisions of administrative agencies.

Moreover, the purpose of having a two-step inquiry is not to give the government two bites at the apple.  Rather, as Khan argues, the purpose of the second inquiry is to evaluate any new circumstances that may have arisen or any new facts that have come to light during the one year period applicants are required to wait between when they are granted asylum and when they apply for permanent residency.  As one court recently described it: "the two step process is not indicative of the legislative intent to bar collateral estoppel . . . The one year wait time is a trial period to allow the government to assess how an asylee adjusts to the United States.  The second step is to evaluate any new information or problems that may have arisen in that year."  Islam v. Department of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL   'O'   JS-6

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

Homeland Security, ---F. Supp. 3d ---, 2015 WL 5653548, at *5 (N.D. Cal. 2015). Accordingly, were new circumstances to arise during the year after Khan was granted asylum, USCIS could consider those circumstances in ruling on his application for permanent residency. For example, if new evidence were to come to light regarding Khan's involvement with the MQM–A and his purported support of terrorist activities, USCIS might have cause to reevaluate Khan's admissibility.

However, in cases such as this, where the parties appear to concede that no material facts have changed since the applicant was granted asylum, permitting the same issue to be adjudicated twice would only cause inefficiency and potentially result in inconsistent decisions. These are exactly the harms collateral estoppel is intended to prevent—i.e., wasting judicial resources, unfairness to parties who have already fully litigated an issue, and inconsistent decisions. See also Elliott, 478 U.S. at 798 ("Th[e] value [of collateral estoppel], which encompasses both the parties' interest in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources, is equally implicated whether factfinding is done by a federal or state agency.") (citations omitted).

Defendants' argument is also undermined by the fact that USCIS's evaluation of an application for adjustment of status involves a number of bars to admissibility that do not apply when an applicant applies for asylum. Specifically, section 1158—which governs applications for asylum—contains six statutory bars for which an IJ must deny an application for asylum. These include: (1) if the alien has participated in the persecution of any person; (2) if the alien has been convicted of a particularly serious crime; (3) if there are reasons for believing that the alien has committed a serious nonpolitical crime outside the United States; (4) if there are reasonable grounds for regarding the alien as a danger to the security of the United States; (5) if the alien has engaged in terrorist activity; and (6) if the alien was firmly resettled in another country prior to arriving in the United States. 8 U.S.C. § 1158(b)(2)(A)(i)-(vi).

By contrast, section 1158—which governs applications for adjustment of status—incorporates section 1182, which is the INA's general provision regarding the classes of aliens who are ineligible for visas or admission to the United States. 8 U.S.C. § 1159(c). Section 1182 sets forth multiple expansive categories under which an alien may be deemed inadmissible to the United States. These categories include, inter alia, health-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL          'O'   JS-6

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|----------|------------------------|------|------------------|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

related grounds, criminal-related grounds, persons who are likely to become a public charge, and a host of "miscellaneous" grounds.  8 U.S.C. § 1182(a)(1)-(10).  Notably, for purposes of this action, under section 1182, "terrorist activities" is listed as only one basis for inadmissibility within the broader category of "Security and related grounds."  Id. § 1182(a)(3)(B).  While none of these grounds are implicated in the instant case, theoretically, USCIS can consider each of these additional bars to admissibility when an applicant applies for an adjustment of statute.

Accordingly, the INA envisions a much more expansive inquiry when an applicant applies for an adjustment of status to permanent resident.  Thus, even if the IJ's findings during the asylum proceedings are given preclusive effect, that does not defeat the purpose of the two-step inquiry because USCIS can still consider the numerous other grounds for admissibility that do not apply when an applicant applies for asylum.  And, as already stated, USCIS can consider whether any new circumstances have arisen or any new evidence has come to light since the applicant was granted asylum.

Finally, other courts have applied principles of collateral estoppel to administrative decisions under sections 1158 and 1159.  See Amrollah v. Napolitano, 710 F.3d 568 (5th Cir. 2013) (applying collateral estoppel and holding that IJ's decision to grant asylum application precluded USCIS from denying application for adjustment of status on grounds of engaging in terrorist activities.); Sile v. Napolitano, 2010 WL 1912645, at *3-4 (N.D. Ill. May 12, 2010) (holding that, USCIS was "collaterally estopped in classifying [applicant] as ineligible for adjustment of status on the ground of firm resettlement" when issue of "firm resettlement" had already been adjudicated in an earlier asylum proceeding).  And, as a general matter, the Ninth Circuit has held that "[i]ssue preclusion applies to immigration proceedings."  Belayneh v. I.N.S., 213 F.3d 488, 492 (9th Cir. 2000).

Accordingly, the Court finds that neither the plain language of sections 1158 and 1159, nor the statutory framework of the INA, indicates a congressional intent to bar the application of collateral estoppel.  The Court will, therefore, evaluate whether collateral estoppel can apply in light of the facts of this case.[5]

---

[5] Lastly, the Court notes the decision in Mugomoke v. Hazuda, 2014 WL 4472743 (E.D. Cal. Sept. 11, 2014).  In that case, the court determined that, in light of the two-step

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       **'O'   JS-6**

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

**B.      The Elements of Collateral Estoppel**

"Collateral estoppel applies to a question, issue, or fact when four conditions are met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." Oyeniran v. Holder, 672 F.3d 800, 806 (9th Cir. 2012) (citing Montana v. United States, 440 U.S. 147, 153–54 (1979)).  Here, defendants only dispute whether Khan has established the first two elements of collateral estoppel.

**1.      Actually Litigated and Decided**

During Khan's asylum proceeding, neither the IJ, nor the BIA, made an express finding regarding whether Khan was statutorily ineligible on the basis of engaging in a terrorist activity.  Defendants argue that this prevents the Court from applying collateral estoppel in this case.  However, under Ninth Circuit case law, collateral estoppel may still apply, even when there has not been an express finding, "if the court in the prior proceeding necessarily decided the issue." In re Harmon, 250 F.3d 1240, 1247 (9th Cir. 2001); See also Clark v. Bear Stearns & Co., 966 F.2d 1318, 1321 (9th Cir. 1992) ("When the issue for which preclusion is sought is the only rational one the factfinder could have found, then that issue is considered foreclosed, *even if no explicit finding of that issue has been made*.") (emphasis added); Stoehr v. Mohamed, 244 F.3d 206, 208 (1st Cir. 2001) ("An issue may be 'actually' decided even if it is not explicitly decided, for it may have constituted, logically or practically, a necessary component of the decision reached in the prior litigation.").

---

evaluation process for obtaining permanent residency, it would "contravene the legislated process" to apply collateral estoppel to decisions made pursuant to sections 1158 and 1159. Id. at *7.  While the Court recognizes Mugomoke as contrary authority, ultimately the Court finds the reasoning in Islam and Amrollah more persuasive.  Accordingly, for the reasons stated *supra* the Court finds that the application of collateral estoppel to sections 1158 and 1159 does not contradict the legislative purpose in having a two-step evaluation process for obtaining permanent residency.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**    **JS-6**

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|----------|------------------------|------|------------------|
| Title    | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

Here, while neither the IJ nor the BIA made an express finding regarding whether Khan had engaged in terrorist activity, that issue was "necessarily" decided during Khan's asylum proceeding. As explained above, under the statutory framework of the INA, before an IJ may grant asylum he or she *must* determine that none of the statutory bars to admissibility applies to the applicant. See 8 U.S.C. § 1158(b)(2). One of these statutory bars applies if the applicant has engaged in "terrorist activity." 8 U.S.C. § 1158(b)(2)(A)(v). Accordingly, before the IJ could grant Khan's application for asylum he was required to determine that Khan had not engaged in a terrorist activity. Had he determined that Khan's involvement with the MQM-A constituted a terrorist activity, the IJ would have been statutorily precluded from granting Khan asylum. Therefore, this issue was necessarily litigated and decided during Khan's asylum proceeding.

Under similar circumstances, at least two other courts have reached the same conclusion. In Amrollah, the plaintiff fled Iran in 1998 and applied for asylum in the United States. 710 F.3d at 570. In his application for asylum and during his asylum hearing, the plaintiff acknowledged that he had provided support for the mujahedeen movement in Iran. Id. An IJ granted the plaintiff's application for asylum in 1999. Id. A year later, the plaintiff applied for an adjustment of status to permanent resident. Id. After several delays, the government denied the plaintiff's application on the grounds that he had engaged in a terrorist activity, namely, his support for the mujahedeen movement in Iran. Id.

On appeal, the plaintiff argued that the government should have been collaterally estopped from denying his application, because the IJ had already, and necessarily, determined that his support for the mujahedeen movement did not constitute terrorist activity when he granted the plaintiff's application for asylum. Id. at 571. The Fifth Circuit agreed. The court stated that, under these circumstances, the actually litigated prong was "easily satisfied." Id. They explained that:

> [T]he immigration judge was *not permitted* to grant asylum to [the plaintiff] if he satisfied any of [the] exceptions to admissibility under § 1182, including providing material support to any individual or organization that engaged in terrorist activities. In other words, the IJ's ruling that [the plaintiff] was admissible necessarily included, under the structure of the statute, a finding that [plaintiff] did not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'      JS-6

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|----------|------------------------|------|------------------|

| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. |
|-------|----------------------------------------------|

provide support to an individual or organization that engaged in
terrorist activities.

Id. 572 (emphasis in original).

Similarly, in Islam, the plaintiff fled Pakistan in 2000 and applied for asylum in the
United States.  2015 WL 5653548, at *1.  During his asylum proceedings, the plaintiff
acknowledged that, like Khan, he was a member of the MQM–A.  Id.  An IJ ultimately
granted the plaintiff's application for asylum.  Id.  A year later, the plaintiff applied with
USCIS for an adjustment of status to permanent resident.  Id.  However, USCIS
determined that the plaintiff was ineligible because he had engaged in a terrorist
activity—his involvement with the MQM–A.  Id.

The plaintiff appealed that denial and argued that USCIS should be collaterally
estopped from denying his application on the grounds that he had engaged in a terrorist
activity.  Id. at *2.  The defendants argued, however, that "the IJ's opinion never
mentioned the relevant statute, 8 U.S.C. § 1182 [which defines 'terrorist activity']" and
"neither the IJ nor the BIA in granting [the plaintiff] asylum relied on the absence of any
terrorist activity."  Id. at *3.  Therefore, the defendants contended, the issue has not been
actually litigated.  Id.  The court rejected this argument and found for the plaintiff.
Specifically, the court reasoned that, "[b]ecause the IJ was statutorily barred from
granting [the plaintiff] asylum if he was found to have participated in terrorist activity,
that issue was necessarily decided when the IJ did in fact grant [the plaintiff] asylum."
Id.  Therefore, the court found that it was not necessary for the IJ to have made an
express finding that the plaintiff did not engage in terrorist activity, because under the
statutory framework such a finding was inherent in the decision to grant asylum.  Id.  The
Court finds the reasoning in these cases persuasive.

Nonetheless, defendants argue that these cases are distinguishable.  Specifically,
they argue that in Islam the court noted that the Department of Homeland Security cross-
examined the plaintiff about his involvement with MQM-A, and that during closing
arguments both the Department of Homeland Security and the plaintiff's counsel
addressed his involvement in terrorist activity.  Id.  Similarly, in Amrollah, the Fifth
Circuit noted that the "government cross-examined [the plaintiff] extensively about his
support of the mujahedeen movement."  710 F.3d at 571.  Defendants argue that, unlike

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'    JS-6

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|----------|------------------------|------|------------------|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

in these cases, the issue of Khan's involvement in terrorist activity was not significantly addressed during his asylum proceedings. However, it is not clear that this factor was essential to the decisions in either <u>Islam</u> or <u>Amrollah</u>. Rather, both of those courts explained in great detail how, under the statutory framework of the INA, the decision to grant an application for asylum necessarily entails a determination that the applicant has not engaged in terrorist activity.

Moreover, contrary to defendants' assertion, the issue of Khan's involvement with the MQM–A *was* significantly addressed during his asylum proceedings. Khan referenced the MQM–A in multiple questions on his application for asylum and submitted a declaration admitting that he had joined the MQM–A in September of 1996 and describing the group's activities. CAR, at 445-46, 451-52. In fact, the basis for Khan's application for asylum was that he feared persecution in Pakistan because of his membership with the MQM–A. <u>See id</u> at 441-49. The immigration officer also addressed the MQM–A in Khan's assessment. <u>Id.</u> at 429-31. Most significantly, in his assessment, the immigration officer noted as one of the discrepancies in Khan's testimony that he had described the MQM–A as a non-violent organization when, in fact, publicly available documents indicated that the organization had engaged in violent activities and that its leaders had condoned terrorist activities. <u>Id.</u> at 431. In addition, during his asylum hearing before the IJ, Khan was asked a number of questions about his activities on behalf of the MQM–A and the IJ referenced these questions in his order denying Khan's application. <u>Id.</u> at 147, 178-80. Finally, the BIA mentioned Khan's membership in the MQM–A in its order reversing the decision of the IJ. <u>Id.</u> at 59. Accordingly, the issue of Khan's involvement with the MQM–A was raised at every stage of Khan's asylum proceeding.[6]

---

[6] Defendants also argue that the Ninth Circuit applies a more limited version of collateral estoppel than that applied by the Fifth Circuit in <u>Amrollah</u>. Specifically, they argue that "the Ninth Circuit requires an examination of the proceeding and a determination that the factfinder could not have reached its decision on other grounds." Dkt. 49, at 19 (citing <u>Clark</u>, 966 F.2d at 1321 ("We must decide whether a rational factfinder could have reached a conclusion based upon an issue other than that which the defendant seeks to foreclose.")). However, that is precisely what occurred here. As explained above, the IJ "could not have reached its decision" to grant Khan asylum *unless* he determined that Khan had not engaged in a terrorist activity. And, as already stated,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'    JS-6

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

Finally, at oral argument, counsel for defendants cited <u>Kim v. Johnson</u>, 2016 WL 48090 (N.D. Cal. Jan. 5, 2016), a recent decision of the Northern District of California, which he contends weighs against the application of collateral estoppel in this case. In <u>Kim</u>, the plaintiff initially applied for permanent residency with USCIS. <u>Id.</u> at *3. On his application, the plaintiff was asked whether he had ever procured a visa by fraud, to which he answered, "yes." <u>Id.</u> Procuring a visa by fraud renders an applicant statutorily ineligible for permanent residency. 8 U.S.C. § 1182(a)(6)(C)(i). Nonetheless, USCIS granted the plaintiff's application for an adjustment of status to permanent resident. <u>Kim</u>, 2016 WL 48090, at *3. The plaintiff then applied for naturalization with USCIS. <u>Id.</u> One of the requirements for naturalization is that the applicant must have been previously "lawfully admitted for permanent residence." 8 U.S.C. § 1427(a). Despite USCIS's earlier ruling granting the plaintiff's application for adjustment of status, USCIS denied the plaintiff's application for naturalization. <u>Kim</u>, 2016 WL 48090, at *3 Specifically, USCIS reasoned that because plaintiff had previously procured a visa by fraud he should not have been granted permanent resident status. <u>Id.</u>

On appeal before the district court, the plaintiff argued that USCIS should be deemed to have waived the "fraud" bar to admissibility when it granted his application for adjustment of status. <u>Id.</u> Specifically, the plaintiff noted that, pursuant to section 1182(i)(1), the Attorney General may exercise his or her discretion to waive application of the fraud bar to admissibility. <u>Id.</u> at *5. While the plaintiff acknowledged that USCIS had made no express finding to waive application of the fraud bar, the plaintiff argued that the court could infer a waiver since his application could not have been granted in the absence of a waiver of the fraud bar. <u>Id.</u> at *8. The court disagreed and upheld the decision of USCIS. However, this case is distinguishable from the instant case for several reasons.

the Ninth Circuit has recognized that an issue may have been necessarily decided by implication. <u>See</u> <u>Clark</u>, 966 F.2d 1318, 1321 (9th Cir. 1992) ("When the issue for which preclusion is sought is the only rational one the factfinder could have found, then that issue is considered foreclosed, *even if no explicit finding of that issue has been made*.") (emphasis added); <u>see also</u> *Moore's Federal Practice—Civil* § 132.03[3][e] (Matthew Bender 3d ed.) ("An issue that was necessarily implicit in a larger determination is given issue preclusive effect. An issue that is distinctly presented in the pleadings and necessarily resolved may be reflected in the decision that includes that point, although it may not be expressly mentioned in the decision.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL    'O'    JS-6

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|----------|------------------------|------|------------------|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

First, Kim involves a different immigration proceeding than the present case—i.e., an application for naturalization as opposed to an application for adjustment of status. Second, Kim did not involve the application of collateral estoppel. Rather, in Kim the court addressed whether the Attorney General's discretionary right to waive bars to admissibility for certain applicants could be exercised implicitly, and whether such an implicit waiver could bind USCIS in a subsequent proceeding.

However, most significantly, in Kim the defendants presented evidence that USCIS's initial decision to grant the plaintiff permanent residency constituted a legal error. Specifically, while the INA grants the Attorney General the discretion to waive bars to admissibility in certain cases, USCIS has promulgated regulations regarding the process by which the Attorney General may exercise that discretion. See 8 C.F.R. § 212.7. In particular, an applicant is required to submit a formal application requesting a waiver and pay a fee. Id. § 212.(7)(a)(1). Unless an applicant complies with these regulations, USCIS is not permitted to waive the applicant's bar to admissibility. See 8 C.F.R. § 245.1(f) ("an application [for a waiver] under this part shall be the sole method of requesting the exercise of discretion under section [1182(i)] as [it] relate[s] to the inadmissibility of an alien in the United States."). In Kim, it was undisputed that the plaintiff had not complied with USCIS's regulations. 2016 WL 48090, at *8. Thus, the court reasoned:

> Plaintiff argues that USCIS waived his bar to admissibility *de facto* and *sub silencio*. There is no evidence to support that finding. USCIS's regulations make clear that Plaintiff was required to affirmatively apply for a waiver of his bar to admissibility when he applied for adjustment of status by completing a designated form and paying a certain fee. See 8 C.F.R. §§ 212.7(a)(1) and 245.1(a). It is undisputed that Plaintiff never did so. The Court cannot find a silent waiver-in-fact given these express application requirements.

Id.

Accordingly, in Kim, when USCIS granted the plaintiff's application for permanent residence, it lacked the legal authority to waive the fraud bar because the plaintiff had not formally requested a waiver. By contrast, here, there can be no question

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'     JS-6

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|----------|------------------------|------|------------------|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

that the IJ had the legal authority to consider the evidence of Khan's involvement with the MQM–A and find that this involvement did not constitute "terrorist activity." Moreover, what USCIS is attempting to do in this case is reevaluate the same evidence considered by the IJ in order to reach a different conclusion. While, USCIS may not agree with the findings of the IJ, that does not constitute a legal error. Thus, there is no evidence of a legal error by the IJ during Khan's asylum proceeding, and this case is, therefore, readily distinguishable from Kim.

For all of the foregoing reasons, the Court finds that the issue of Khan's involvement in terrorist activity was actually litigated and decided during his asylum proceeding.

## 2.    Identical Issues

Defendants argue that the issues at stake in Khan's asylum and adjustment of status applications are not identical. More specifically, they argue that applications for asylum and for adjustment of status are entirely different applications that provide an applicant with different benefits. For example, defendants note that "while an asylum grant provides an asylee with a lawful status and the right to work," an "adjustment of status provides the asylee with the right to live permanently in the United States." Dkt. 49, at 20-21. Defendants' argument misses the mark.

The relevant inquiry is not whether Khan would have received different benefits from his application for asylum and his application for adjustment of status. Rather, the question for the Court is whether the IJ and USCIS relied upon the same facts and legal standard when determining whether Khan was statutorily ineligible on the grounds that he had engaged in terrorist activity.

Thus, in Amrollah, the court evaluated whether the definition of "terrorist activity" had changed between 1999, when the plaintiff was granted asylum, and 2010, when the plaintiff applied for an adjustment of status, and after Congress had enacted the PATRIOT Act. 710 F.3d at 572-73. The Fifth Circuit found that the PATRIOT Act had not altered the definition of "terrorist activity" in any material respect and that the Government had not presented "any additional facts which would make the IJ's ruling distinguishable." Id. Accordingly, the court found that the issues were identical in both

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'    JS-6

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|---|---|---|---|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

plaintiff's application for asylum and his application for adjustment of status.  Id. at 571-73(citing Pace v. Bogalusa City Sch. Bd., 403 F.3d 727, 290 (5th Cir. 2005) ("[R]elitigation of an issue is not precluded unless the facts and the legal standard used to assess them are the same in both proceedings.").

Similarly, here, the parties agree that Khan's last involvement with the MQM–A occurred before he came to the United States in November of 2001.  Accordingly, both the IJ and USCIS considered the same factual record when evaluating whether Khan was statutorily barred on the grounds of engaging in terrorist activity.  Moreover, the definition of "terrorist activity" is the same when adjudicating an application for asylum and an application for adjustment of status.  Both sections 1158 and 1159 incorporate the definition of "terrorist activities" set forth under 8 U.S.C. § 1182(a)(3)(B)(i).  See also Amrollah, 710 F.3d at 571 ("In other words, both 8 U.S.C. § 1158 (the statute governing petitions for asylum) and 8 U.S.C. § 1159 (the statute governing petitions for permanent resident status), look to 8 U.S.C. § 1182 (the statute governing inadmissible aliens) to determine whether an alien is eligible for relief.").  Accordingly, when adjudicating Khan's respective applications, the IJ and USCIS relied upon the same factual record and applied an identical legal standard to determine whether Khan was statutorily ineligible on the grounds that he had engaged in terrorist activity.  The issues were therefore identical in both of Khan's proceedings.

Therefore, because Khan has established that all of the elements of collateral estoppel are satisfied, the Court finds that defendants are collaterally estopped from concluding that Khan is ineligible for an adjustment to permanent resident on the grounds that he has engaged in terrorist activity.

## V.    CONCLUSION

In accordance with the foregoing, the Court finds that USCIS is collaterally estopped from denying plaintiff's application for adjustment of status on the grounds that he has engaged in a terrorist activity.  The Court, therefore, **GRANTS** plaintiff's motion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**    **JS-6**

| Case No. | 2:14-CV-06288-CAS(CWx) | Date | February 1, 2016 |
|----------|------------------------|------|------------------|
| Title | ABDUL M. KHAN, ET AL. V. JEH JOHNSON, ET AL. | | |

for summary judgment and **DENIES** defendant's motion for summary judgment.
USCIS's denial of plaintiff's application is hereby set aside pursuant to 5 U.S.C. § 706.

IT IS SO ORDERED.

| | 00 | : | 18 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |